**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRYAN AND JACQUELINE GRANELLI (fka JACQUELINE HOEY), | Civil Action No.: 10-2582 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| CHICAGO TITLE INSURANCE COMPANY AKA/DBA CHICAGO TITLE OF NEW JERSEY INC. AND FIDELITY NATIONAL TITLE OF NEW JERSEY, INC., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of a Motion for Summary Judgment on Liability filed by Defendant on October 12, 2012. The Court has considered the submissions of both parties in support of and in opposition to the present motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion is granted.

## I.    BACKGROUND

Plaintiffs, Jacqueline Granelli and Bryan Granelli (collectively, "Plaintiffs"), owned real property located at 221 Summit Drive, Boonton, New Jersey ("Boonton Property").[1]  Dfs. SOF at ¶ 1.  Plaintiffs maintained a Residential Title Insurance Policy ("Policy") on this property, which Plaintiffs obtained through Defendants.  *Id.*  During the course of their ownership, Plaintiffs discovered that the Boonton Property was subject to several boundary disputes with adjacent properties.  *Id.* at ¶ 2.  Plaintiffs submitted a claim with Defendants in August 2008 seeking coverage under their Policy.  *Id.*

After receiving Plaintiffs' claim, Defendants promptly assigned a claims examiner.  *Id.* at ¶ 3.  This claims examiner investigated the claim between August 2008 and February 2009 and maintained "constant communications with a surveyor and with Plaintiffs."  *Id.*  In February 2009, the claim was reassigned to another claims examiner who "continued the investigation by, among other things, (a) consistently communicating with the surveyor, appraisers, Boonton Township, and Plaintiffs (by e-mail, letter and telephone); (b) hiring an appraiser at Defendants' expense; (c) pulling and reviewing maps and surveys; (d) reviewing memoranda prepared by surveyors; and (e) learning the history of Plaintiffs' neighborhood; (f) attempting to determine the diminution in value, if any, of surrounding property; and (g) attempting to negotiate a

---

[1] Local Civil Rule 56.1(a) requires parties moving for summary judgment to furnish a Statement of Material Facts not in Dispute.  *See* Local Rule 56.1(a).  The rule then requires the non-moving party to furnish, with his opposition papers, "a responsive Statement of Material Facts addressing each paragraph of the movant's statement, indicating agreement or disagreement.  *Yocham v. Novartis Pharms. Corp.*, 736 F.Supp.2d 875, 879 (D.N.J. 2010).  Plaintiffs did not comply with their requirement under this rule but instead offered their own separate discussion of the facts.  *See* Pls. Br. at 3.  Local Civil Rule 56.1(a) specifically provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  *See* Local Rule 56.1(a).  Accordingly, the Court accepts Defendants' recitation of facts as "undisputed" for purposes of this motion.  *See Yocham*, 736 F.Supp.2d at 879.  However, even if the Court were to read Defendants' recitation in light of Plaintiffs' statement of facts, the Court would still find that there were no genuine issues of fact material to the present motion.  The only facts contested by Defendants are immaterial to the facts at issue here.  *See* Pls. Br. at 1-3.

2

resolution of the issues with Plaintiffs' neighbors and Boonton Township." *Id*. at ¶ 4.  During

the course of this investigation, Defendants "offered to issue a letter of indemnification to any

potential purchasers' title insurance companies, but none of those offers were accepted." *Id*. at ¶

7.

      In May 2009, the claims examiner concluded that it would be necessary to bring a quiet

title action to resolve the boundary disputes, and he immediately contacted Defendants' in house

counsel, Brian Romanowsky.  *Id*. at ¶ 5.  Romanowsky maintained consistent communication

with the surveyor and attempted to contact all of Plaintiffs' neighbors with boundary disputes.

Dfs. SOF at ¶ 6.  Defendants were not required to "immediately commence the quiet title action

upon receipt of Plaintiffs' claim," and "had the right to investigate the claim and pursue non-

litigation resolutions of the claim before commencing the quiet title action." *Id*. at ¶¶ 9-10.  In

April 2010, when Romanowsky's efforts to resolve the boundary disputes through non-legal

means failed, Romanowsky filed a quiet title action and provided Plaintiffs' with legal

representation at Defendants' expense.  *Id*. at ¶ 8.  The quiet title action was successful, and, in

August 2011, Plaintiffs' legal representatives resolved all boundary disputes leaving the Boonton

Property free of encumbrances.  *Id*. at ¶ 11.

      On May 19, 2010, Plaintiffs brought the present action against Defendants seeking

damages allegedly caused by Defendants' actions and/or inactions pursuant to the Policy.

Plaintiffs sought damages under the following theories:  breach of contract, breach of the duty of

good faith and fair dealing, detrimental reliance, New Jersey Trade Practices Act, and the New

Jersey Consumer fraud Act.  *See* Pls. Comp. at 3-8.  On September 12, 2011, Defendants filed a

Motion for Partial Summary Judgment on Damages, which the Court granted in part and denied

in part.  *See Granelli v. Chicago Title Ins. Co.*, No. 10-2582, 2012 U.S. Dist. LEXIS 80019

(D.N.J. June 8, 2012).  On October 10, 2012, Defendants filed the present Motion for Summary

Judgment on Liability.[2]

## II.    LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  *Celotex Corp. v. Catrett*, 744 U.S. 317, 323 (1986).  The burden then

shifts to the non-moving party to present evidence that a genuine issue of material fact compels a

trial.  *Id*. at 324.  In so presenting, the non-moving party must offer specific facts that establish a

genuine issue of material fact, not just "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, the

non-moving party may not rest upon the mere allegations or denials in its pleadings.  *See*

*Celotex*, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions,

bare allegations, or speculation to defeat summary judgment.  *See Ridgewood Bd. of Educ. v.*

*N.E. ex. Rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all

facts and their reasonable inferences in the light most favorable to the non-moving party.  *See*

*Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.    DISCUSSION

---

[2] Plaintiffs allege that Defendants' second Motion for Summary Judgment is barred because the "Defendants' previous request for filing a motion for summary judgment on liability issues was denied via formal Order on September 7, 2011."  Pls. Br. at 8.  Although the Court denied Defendants' request to file a combined motion for summary judgment on liability and damages, the Court did not prohibit Defendants' from filing bifurcated motions.  *See* Order, Docket Entry 41 (Sept. 7, 2011).  Accordingly, Plaintiffs' argument is without merit.

Plaintiffs seek damages under theories of breach of contract, breach of the duty of good faith and fair dealing, detrimental reliance, New Jersey Insurance Trade Practices Act, and New Jersey Consumer Fraud Act. Pls. Comp. at 3-8. Defendants filed a motion for partial summary judgment as to the issue of damages, which the Court granted in part and denied in part. *See Granelli*, 2012 U.S. Dist. LEXIS 80019. Defendants now request summary judgment as to the issue of liability.[3] For the reasons that follow, the Court grants this motion in its entirety.

### A.    Breach of Contract

Title insurance is a contract of indemnity intended to protect the insured against "loss or damage suffered by reason of liens, encumbrances upon, defects in or umarketability of the title to said property." N.J. Stat. § 17:46B-1. Under New Jersey law, an "insurer has three related duties under a title policy: (1) to indemnify the loss upon payment of damages; (2) to cure the title defects if feasible; and (3) to defend the insured in a judicial attack on its title." *Enright v. Lubow*, 202 N.J. Super. 58, 73 (App. Div. 1985). The insurer's primary duty is to vindicate the title. *Costaglio v. Lawyers Title Ins. Corp.*, 234 N.J. Super. 400, 407 (Ch. Div. 1988). If there is a question as to the land guaranteed by the title, the company must defend the policyholder's title. *See id.* If unsuccessful and the "the insured loses lands as a result, it must pay [the insurer] the value of the land lost." *Id.*

Here, Plaintiffs do not have any valid arguments under the first or third categories of insurer responsibilities set forth in *Enright*. *See Enright*, 202 N.J. Super. at 73. Plaintiffs'

---

[3]As an initial matter, Plaintiffs argue that the present motion is barred under res judicata and collateral estoppel. *See* Pls. Br. at 7-9. Specifically, Plaintiffs argue that the "issues before [the Court] are the same briefed by Defendants in September 2011." *Id.* at 9. Defendants' previous motion was for judgment on the issue of damages, not liability as the Defendants' request here. *See Granelli*, 2012 U.S. Dist. LEXIS 80019. Accordingly, Plaintiffs' argument is without merit.

5

Boonton Property was not the subject of "judicial attack on its title," nor have Plaintiffs lost any of their land thereby requiring Defendants to "pay the value of the land lost." *See id*. Instead, as Count Five of Plaintiffs' complaint, Plaintiffs allege that Defendants breached the Policy by not providing "good title" to the property at the time the Policy was issued and by failing to promptly and diligently take action to quiet title. *See* Pls. Br. at 9.

Plaintiffs' first argument reflects a fundamental misunderstanding of title insurance. Insurance companies do not provide policyholders with a guarantee that there are no "non-record defects in the title of a parcel of real estate." *See Ticor Title Ins. Co. v. FTC*, 988 F.2d 1129, 1132 (3d Cir. 1993). Instead, they issue a policy to protect the policyholder against title defects "not discoverable from a search of the public records on the parcel, as well as losses caused by errors or mistakes in the search and examination." *See id*. Here, Defendants provided Plaintiffs with a policy protecting Plaintiffs' fee simple interest in their Boonton Property. *See* Dfs. Exhibit A. Any such breach must occur after this policy was issued and for a failure to comply with one of an insurer's three duties to policyholders. *See generally Ticor Title Ins. Co.*, 988 F.2d at 1132; *see also Enright*, 202 N.J. Super. at 73.

Plaintiffs' second argument is premised on Defendants' duty to "cure the title defects if feasible." *See Enright*, 202 N.J. Super. at 73. Plaintiffs' do not allege that Defendants' failed to cure the defects, but instead argue that Defendants' efforts to do so were not prompt and reasonable. *See* Pls. Br. at 9. This argument is without merit. In its June 8, 2012 opinion, this Court held that Defendants' actions in curing the defect were:

> reasonable, throughout the claim investigation. It hired all necessary parties, exhausted all non-legal outlets for resolution of the issue, and when it became clear the issue would have to be resolved in court, it went forward at its own expense. Despite Plaintiffs' desire for an immediate remedy the title insurance company is not required to proceed immediately into litigation. It is within its

6

right to assess the situation and pursue alternative resolutions to the dispute that do not involve legal proceedings.

*Granelli*, 2012 U.S. Dist. LEXIS 80019, at *18. Accordingly, Plaintiffs' allegations are not supported by the facts before this Court. Defendants' actions were prompt and reasonable, and Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim. *See Granelli*, 2012 U.S. Dist. LEXIS 80019, at *18.

### B.   Breach of Duty of Good Faith and Fair Dealing

Every contract contains an implied covenant of good faith and fair dealing. *See Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997). To prevail on a claim for breach of this duty, a party must demonstrate, 1) the existence of a contract, 2) "some conduct that denied the benefit of the bargain originally intended by the parties," and 3) bad faith. *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225 (2005) (internal quotations omitted). Bad faith is the "absence of a reasonable basis for denying the benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett v. Loyd's*, 131 N.J. 457, 473 (1992) (quoting *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376-77 (1978)).

As Count Six of Plaintiffs' complaint, Plaintiffs allege that Defendants violated this covenant by "disput[ing] their duty and obligation to provide coverage for the full amount of the claims asserted against the property and to remove a title defects." Pls. Comp. at 5. This claim fails for two reasons. First, as discussed above, Plaintiffs received the benefit of the bargain they contracted for. *See Enright*, 202 N.J. Super. at 73. Defendants complied with the terms of the Policy and took reasonable steps to quiet title when the land dispute could not be resolved through other means. Second, there is no evidence of bad faith. *See Brunswick Hills Racquet Club, Inc..*, 182 N.J. at 225. On the contrary, the Court already held that Defendants acted

7

"reasonable" throughout the claim investigation. *See Granelli*, 2012 U.S. Dist. LEXIS 80019, at *18. Accordingly, Plaintiffs do not provide any factual support for their breach of duty of good faith and fair dealing claim, and Defendants are entitled to summary judgment.

## C.   Detrimental Reliance

Detrimental reliance is an equitable doctrine founded in the "fundamental duty of fair dealing imposed by law." *Dent v. Cingular Wireless LLC*, No. 07-0552, 2007 U.S. Dist. LEXIS 44612, at *15 (D.N.J. 2007) (citing *State v. Kouvatas*, 292 N.J. Super. 417, 425 (App. Div. 1996)). A claim for detrimental reliance consists of three elements:  1) a representation; 2) "knowledge that a second person is acting on the basis of that representation;" and 3) substantial detrimental reliance by that person on the representation. *See id.*  As Count Seven of Plaintiffs' complaint, Plaintiffs allege that they detrimentally relied on Defendants' promise in the Policy to "provide coverage for claims arising from defects in title." Pls. Comp. at 6.  However, as discussed above, Defendants complied with all of their obligations under the Policy. *See Enright*, 202 N.J. Super. at 73.  Accordingly, Plaintiffs' reliance on the contract was not detrimental, and Defendants are entitled to summary judgment.

## D.   New Jersey Insurance Trade Practices Act

The New Jersey Insurance Trade Practices Act ("ITPA") regulates "trade practices in the business of insurance." *See Retail Clerks Welfare Fund v. Continental Casualty Co.*, 71 N.J. Super. 221, 226 (App. Div. 1961).  As Count Eight of Plaintiffs' complaint, Plaintiffs allege that Defendants violated the ITPA. *See* Pls. Comp. at 7.  The ITPA does not permit a private cause of action. *See Pierzga v. Ohio Casualty Group of Ins. Cos.*, 208 N.J. Super. 40, 47 (App. Div. 1986) (stating that "violations of the statue do not create individual or private causes of action"); *see also Retail Clerks Welfare Fund*, 71 N.J. Super. at 226 (stating that the subject matter of the

ITPA "deals with a wrong to the public rather than to the individual."). Plaintiffs concede that "there is no private cause of action under the New Jersey Insurance Trade Practices Act." *See* Pls. Br. at 14.

Plaintiffs contend that "Count VIII of its complaint asserts a claim for common law bad faith and fair dealing, and it simply references the ITPA because the ACT provides guidelines for determining whether an insurer has acted in bad faith." *Id*. This argument is without merit. Count Eight is clearly captioned "New Jersey Insurance Trade Practices Act," and it specifically alleges that "Defendants claim handling practices with respect to Plaintiff's [sic] claims constitute a violation of the applicable standards . . . established by the New Jersey Insurance Trade Practices Act." *See* Pls. Comp. at 7. Moreover, on at least two occasions since—one being Plaintiffs' Brief in Opposition to Defendants Motions for Summary Judgment on Liability—Plaintiffs allege that Defendants violated the ITPA. *See* Pls. Br. at 5; *see also* Pls. SOF[4] at ¶ 5. The Court is not persuaded that Plaintiffs' intended to raise a common law claim, and Defendants are entitled to summary judgment. *See Pierzga*, 208 N.J. Super. at 47.

## E.    New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act ("CFA") prohibits "unconscionable commercial practice[s] . . . in connection with the sale or advertisement of any merchandise," including insurance policies. *See* N.J.S.A. § 56:8-2; *see also Kuhnel v. CAN Ins. Companies*, 322 N.J. Super. 568, 582 (App. Div. 1999). The CFA does not regulate the payment of insurance benefits. *See Fuscellaro v. Combined Ins. Group, Ltd.*, No. 11-723, 2011 U.S. Dist. LEXIS

---

[4] Plaintiffs filed this Statement of Facts, available at docket number 37, in connection with Defendants' Motion for Summary Judgment on the Issue of Liability. Plaintiffs incorporate their previous Statement of Facts by reference in the pending motion. *See* Pls. Br. at 3 (stating that Plaintiffs "shall rely on Plaintiff's [sic] *Statement of Material Facts* and the Verification of Exhibits by Peter J. Cresci, Esq.")

111470, at *15 (D.N.J. Sept. 29, 2011).  "A claim for failure to pay benefits is a claim for breach of contract, and the breach of an enforceable contract does not constitute a violation of the CFA." *Id.* at *15-16. Here, as Count Nine of Plaintiffs' complaint, Plaintiffs allege that Defendants violated the CFA by misrepresenting the "coverage of [the] title insurance," thereby inducing Plaintiffs to "purchase the title insurance on the mistaken belief that the title policy would insure good and marketable title." *See* Pls. Br. at 18; *see also* Pls. Comp. at 8.

Plaintiffs' allegation fails for two reasons.  First, Plaintiffs' argument cannot fairly be construed as anything more than a breach of contract claim. The Policy is intended to "insure good and marketable title." There was no "mistaken belief." Plaintiffs are merely arguing again that they did not receive the benefit of that bargain. *See* Pls. Br. at 18.  And, the "payment of insurance benefits" is not subject to the CFA. *See Fuscellaro*, 2011 U.S. Dist. LEXIS 111470, at *15. Second, to the extent that any of Plaintiffs' arguments could be construed as a claim that Defendants committed an unconscionable practice in connection with the sale or advertisement of the Policy, those allegations would not be supported by the facts before this Court. *See Kuhnel*, 322 N.J. Super. at 582. There is no evidence in the recorded of any "deception, fraud, false pretenses, false promise, misrepresentation," or any other unconscionable practice in connection with the sale or advertisement of this Policy. *See* N.J.S.A. § 56:8-2. Accordingly, Defendants are entitled to summary judgment.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on Liability is granted. An appropriate Order accompanies this opinion.


DATED: December 6, 2011

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE